IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **JULIANNE TAAFFE,** | ) | Case No. 2:15-cv-2870 |
| | ) | |
| and | ) | |
| | ) | |
| **KATHRYN MOON,** | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Judge _____ |
| | ) | |
| v. | ) | |
| | ) | |
| **MICHAEL V. DRAKE, President,** | ) | |
| | ) | |
| **JOSEPH E. STEINMETZ, Executive Vice** | ) | |
| **President and Provost,** | ) | |
| | ) | |
| **CHERYL ACHTERBERG, Dean of the** | ) | |
| **College of Education and Human Ecology,** | ) | |
| | ) | |
| **SANDRA STROOT, Interim Chair of the** | ) | |
| **Department of Teaching and Learning,** | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **ROBERT ECKHART, Executive Director of** | ) | |
| **English as a Second Language Programs,** | ) | |
| | ) | |
| in their official capacities as officers of | ) | |
| **THE OHIO STATE UNIVERSITY,** | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

**I.     INTRODUCTION**

1.     This is an action for prospective injunctive relief under the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*, arising from a pattern of age discrimination and retaliation in and affecting the Ohio State University's department of English

1

as a Second Language (ESL) Programs. Plaintiffs Julianne Taaffe and Kathryn Moon were full-time administrative and professional staff members of that department for over three decades. Defendant Robert Eckhart, Executive Director of ESL Programs, with the knowing approval and support of the leadership of the Department of Teaching and Learning, the College of Education and Human Ecology, and the University, subjected Ms. Taaffe and Ms. Moon to a series of punitive measures because of their age. After they made formal complaints of age discrimination, the Defendants deprived Ms. Taaffe and Ms. Moon of their full-time positions, and ultimately forced them to retire from the University.

## II. JURISDICTION AND VENUE

2. This Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331, this being an action to enforce rights guaranteed by federal statutes. This *ex parte Young* action for injunctive and ancillary relief against individual state officers in their official capacities is outside the scope of immunity afforded to the State of Ohio by the Eleventh Amendment to the U.S. Constitution.

3. The discriminatory acts alleged below were committed within the jurisdiction of the U.S. District Court for the Southern District of Ohio, Eastern Division.

## III. PARTIES

4. Plaintiff Julianne Taaffe is a resident of Columbus, Ohio, in Franklin County, which is within the jurisdiction of the U.S. District Court for the Southern District of Ohio, Eastern Division. Her birth date is September 21, 1955, and she is 59 years old as of the filing of this Complaint.

5. Plaintiff Kathryn Moon is a resident of Columbus, Ohio, in Franklin County, which is within the jurisdiction of the U.S. District Court for the Southern District of Ohio,

Eastern Division.  Her birth date is January 13, 1951, and she is 64 years old as of the filing of this Complaint.

6. Defendant Michael V. Drake is President of the Ohio State University ("OSU" or "the University"), which is a public university and a political subdivision of the State of Ohio. Defendant Joseph E. Steinmetz is OSU's Executive Vice President and Provost, overseeing the administration, coordination, and development of all academic functions of the University. Defendant Cheryl Achterberg is Dean of OSU's College of Education and Human Ecology ("the College").  Defendant Sandra Stroot is Interim Chair of the Department of Teaching and Learning, which falls under the authority of the College of Education and Human Ecology. Defendant Robert Eckhart is Executive Director of English as a Second Language Programs ("ESL Programs"), which falls under the authority of the Department of Teaching and Learning. Collectively, these five officials of the State of Ohio hold the authority to effect prospective relief for the Plaintiffs regarding all employment matters.

7. The actions of the Defendants and their agents and employees, which were within the scope of their employment, were at all relevant times undertaken because of intentional age discrimination and retaliation.

## IV. FACTS

### A. The Plaintiffs' Employment with the Ohio State University

8. ESL Programs is a division of the Department of Teaching and Learning in OSU's College of Education.  ESL Programs teaches English-language skills to OSU undergraduate and graduate students whose first language is not English.

9. ESL Programs is divided into three programs:  the composition program, which teaches writing skills; the Spoken English program, which teaches spoken English skills to

3

international graduate students who are required to have those skills to serve as teaching assistants; and the American Language Program, an intensive English program for international students who do not yet have sufficient English skills to meet the University's admissions standards.  Each of these programs is essential to the University's admission and education of international students, whose presence at the University has increased dramatically over time.

10. Plaintiff Julianne Taaffe began her career in ESL Programs as a teaching assistant in 1983, following her attainment of a Master's degree in English from OSU.  After serving in an administrative capacity in ESL Programs during the 1986-1987 academic year, Ms. Taaffe received a full-time Administrative and Professional Staff appointment in 1987.

11. Between 1987 and the elimination of her position in 2014, a period of over 27 years, Ms. Taaffe served in numerous roles under the title of Academic Program Specialist, including substantial work in each of the three programs within ESL Programs.

12. Ms. Taaffe's experience at OSU included over twenty years working primarily in the American Language Program.  She also spent significant time in both of the other programs within ESL Programs, including three years instructing Spoken English and one year as the Acting Assistant Director of Spoken English.  Ms. Taaffe spent more than four years in full-time, administrative, and teaching assistant roles in the ESL Composition program.

13. Plaintiff Kathryn Moon began her career in ESL Programs in 1983 as a Lecturer (a year-to-year contract position with limited benefits) in the American Language Program, after previous professional experience as a high school English teacher and a teaching assistant in the intensive English program at Ohio University.  She received a full-time Administrative and Professional staff appointment in 1985.  From 1983 until the elimination of her Academic

Program Specialist position in 2014, a period of over 31 years, she served in various roles in each of the three programs within ESL Programs.

14. Ms. Moon's experience at OSU was primarily under the auspices of the American Language Program, with which she served over 30 years, but she also served as an instructor in both the Spoken English and Composition programs during that time, and she spent over a year exclusively serving in each of those programs within ESL Programs.

15. Both Ms. Moon and Ms. Taaffe conducted a variety of additional activities for ESL Programs during their tenures, including presenting at academic conferences, publishing research about ESL instruction, and fulfilling special assignments for OSU. For instance, both Ms. Moon and Ms. Taaffe spent several summers training Japanese secondary school teachers in teaching English as a Foreign Language as part of an ongoing OSU project, and Ms. Moon spent a year teaching ESL to foreign staff at the OSU Medical Center. Ms. Moon conducted needs assessments for American Language Program students and international teaching assistants and composed OSU's handbook for American Language Program students.

16. Ms. Moon and Ms. Taaffe were well regarded both within and outside ESL Programs and OSU, receiving favorable performance reviews, presenting at a variety of academic conferences, taking leadership roles in interdisciplinary projects with other OSU departments and schools, and participating in membership organizations for ESL instructors.

**B.     A Pattern of Age Discrimination Emerges in ESL Programs**

17. In 2009, OSU hired a new executive director of ESL Programs, Russell Clark. Mr. Clark's hiring marked the beginning of a lengthy pattern of discrimination and retaliation against the older workers in ESL Programs, including the Plaintiffs.

5

18. In May 2010, soon after assuming his duties, Mr. Clark was discovered to have sent an email to a colleague outside OSU disparaging his subordinates in ESL Programs based on their age. In the email, he referred to the ESL Programs staff as "an extraordinarily change-averse population of people almost all of whom are over 50, contemp[l]ating retirement (or not) and it's like herding hippos," while "the one really dynamic 30-something with a flexible mind I elevated to the program coordinator position within weeks of getting here and he's doing fine." The "dynamic 30-something" was actually a lecturer with little teaching experience and no administrative experience; he was "elevated" without any hiring process or opportunity for the older staff to apply for the coordinator position.

19. Mr. Clark's derogatory email was copied to a staff member and was subsequently forwarded to others, including the then-chair of the Department of Teaching and Learning, Rebecca Kantor-Martin, Defendant Achterberg, and OSU's then-President, E. Gordon Gee. None of these high-ranking OSU administrators took any action against Mr. Clark. Instead, most notably, Chairperson Kantor-Martin replied to the forwarded email (copying the other administrators) by openly *agreeing* with Mr. Clark's assessment, and she labeled the department's older workers "resistant or unhappy with change." Neither President Gee nor Dean Achterberg took any action in response to either the original email or Ms. Kantor-Martin's derogatory reply.

20. Mr. Clark resigned from his position and left OSU in May 2013. He was replaced by Defendant Eckhart, who was younger, less experienced, less qualified, and less familiar with ESL Programs than the many potential internal candidates. Defendant Eckhart was placed in this position on an interim basis without any hiring process. He was then given the position

6

permanently despite the availability and applications of multiple older, more experienced, and more qualified candidates from within ESL Programs.

21. From the beginning of his tenure, Defendant Eckhart was openly hostile to the older workers in ESL Programs. Throughout the remainder of the Plaintiffs' employment with OSU, he engaged in a pattern of harassment, punishment, and elimination of older workers in ESL Programs, while showing favoritism toward and promoting younger workers. Examples of his discriminatory conduct, which took place with the knowledge, approval, and/or ratification after the fact of administrators in the Department of Teaching and Learning, the College, and the University, included the following:

22. Defendant Eckhart removed each of the coordinators of the three programs within ESL Programs and replaced them with substantially younger, less experienced, and less qualified employees within ESL Programs. Two of the coordinator positions, in Composition and Spoken English, were filled without any application process, and the other, in the American Language Program, was filled by a younger, less qualified candidate despite applications from more experienced staff. In particular, Defendant Eckhart created the Spoken English vacancy by forcing an older staff member into retirement after falsely accusing the staff member of workplace violence. Defendant Eckhart then awarded the Spoken English position to a very young staff member who expressly told him she did not think she was qualified for the position.

23. Defendant Eckhart also non-renewed the contracts of at least six older workers in ESL Programs holding year-to-year contractual positions as lecturers. The workers who were non-renewed were eliminated without any formal explanation, some after decades in ESL Programs. Younger lecturers were retained in place of these older lecturers despite receiving inferior (and in some cases, very negative) performance evaluations from the coordinators in

7

Case: 2:15-cv-02870-CMV Doc #: 1 Filed: 09/29/15 Page: 8 of 16  PAGEID #: 8

their programs. Another long-term employee was subjected to an unjustified and abrupt reduction in force shortly after Defendant Eckhart was awarded his permanent position.

24. Defendant Eckhart also engaged in a pattern of awarding special projects, such as foreign travel opportunities and interdisciplinary projects, to younger, in some cases totally inexperienced staff members in the department without any consideration of older workers.

25. Defendant Eckhart openly spoke of older workers in an offensive and hostile manner. In conversations with other staff members, he referred to the older workers in the department with terms such as "millstones around his neck" and "dead wood." He referred to one experienced older staff member with a mobility issue as "just an old lady who can't walk." He referred to another experienced older staff member as "the Grim Reaper" because she walked with a cane and wore a religious headscarf. He discouraged the program coordinators from giving older workers particular teaching assignments, telling them they needed to look forward, not backward. He also repeatedly threatened the jobs of older workers, telling them they should be grateful for their "jobs with benefits," questioning their work schedules without any basis, and interfering with their assignments.

26. Defendant Eckhart also targeted Ms. Taaffe personally. In the Spring of 2013, shortly before his departure, Russell Clark completed Ms. Taaffe's annual performance evaluation. Mr. Clark, who had apparently come to appreciate the skills of some of the older workers he had previously stereotyped as change averse "hippos," gave Ms. Taaffe a very positive evaluation, emphasizing major accomplishments she had achieved during the prior year. Immediately upon taking Mr. Clark's position, Defendant Eckhart withdrew Mr. Clark's evaluation without explanation and reduced Ms. Taaffe's ratings in five of six performance categories, changing her evaluation from one of the best she had received during her decades of

8

work in ESL Programs to one of the worst she had ever received.  Defendant Eckhart had not observed Ms. Taaffe's performance at all.  In the meeting to discuss the change, Defendant Eckhart began by asking Ms. Taaffe, "how long have you been around here, anyway?"—and when Ms. Taaffe questioned the bizarre change in her evaluation, Defendant Eckhart challenged her to hire a lawyer, stating, "I love lawyers."

### C.     The Plaintiffs Raise Internal and External Complaints of Age Discrimination

27.     After personally experiencing hostile treatment from Defendant Eckhart and observing his mistreatment of other older workers, Ms. Taaffe decided to take action to oppose the pattern of age discrimination within ESL Programs.  She submitted a letter of complaint to Defendant Achterberg, then-Chair of the Department of Teaching and Learning Caroline Clark, Defendant Eckhart, and Keith Calloway, OSU's Employment & Labor Relations Consultant in charge of investigating potential discrimination within the College.  Ms. Taaffe also filed a charge of age discrimination with the Equal Employment Opportunity Commission.

28.     Ms. Moon and several other older current and former employees from ESL Programs subsequently submitted their own letters of complaint to departmental, College, and University administrators and Mr. Calloway.  This resulted in a months-long internal investigation, conducted by Mr. Calloway ("the Calloway investigation").

29.     The Calloway investigation was an exercise in futility from beginning to end.  Mr. Calloway began his first interview, with Ms. Taaffe, by attempting to dissuade her from including Defendant Achterberg as one of the individuals she was accusing of discrimination, due to Defendant Achterberg's power and influence within OSU.  Given that Defendant Achterberg had approved many of the promotion and employment decisions at issue and had failed to take any action in response to the derogatory emails from Russell Clark and Rebecca

9

Kantor-Martin, Ms. Taaffe refused to withdraw her complaint against Defendant Achterberg. Yet, at the conclusion of the investigation, Mr. Calloway addressed his findings as a report to Defendant Achterberg—one of the administrators he was tasked with investigating.

30. The Calloway investigation concluded with a report dated October 1, 2014. Mr. Calloway interviewed only a few individuals—primarily administration representatives—and then adopted, at face value, every position taken by the OSU administrators who were named in the Plaintiffs' complaints.

31. Mr. Calloway's report accepted the Defendants' obviously insufficient semantic explanations for their actions. For instance, he credited the claim that the coordinator positions awarded to younger employees were not "promotions," but merely "changes in working title." However, these "changes in working title" were more than ministerial; they were accompanied by pay increases, and they protected younger, less qualified employees from the elimination of their jobs. Mr. Calloway used this semantic distinction as an excuse not to even inquire into the reasons these younger employees were selected.

32. Similarly, OSU administrators told Mr. Calloway that the older lecturers who were eliminated were on year-to-year contracts that were simply not renewed; he accepted this explanation without even attempting to examine what possible reason could have motivated the Defendants to abruptly non-renew the contracts of these older employees after decades of well-regarded service, when younger, less accomplished employees were retained.

33. Mr. Calloway also failed to inquire into any explanation for the unjustified downgrading of Ms. Taaffe's performance evaluation.

34. Worse, Mr. Calloway claimed that no one could corroborate Defendant Eckhart's age-based discriminatory comments—but in fact, contrary to Mr. Calloway's false claim, his

10

own interviewees confirmed firsthand accounts of Defendant Eckhart's comments, including Defendant Eckhart's calling older workers "millstones around my neck," telling a younger employee that the older workers were "looking backward," and calling a particular employee "just an old lady who can't walk." A witness also told Mr. Calloway that Defendant Eckhart had stated that he intended to make changes that would cause many of the older workers to retire.

35. Ultimately, the Calloway investigation's only finding adverse to Defendant Eckhart was that he "manifested poor judgment in making certain statements to staff members." There were no findings adverse to any of the other administrators implicated in the complaints.

36. Ms. Taaffe, Ms. Moon, and another Academic Program Specialist, Jane Smirniotopoulos, responded in writing to Mr. Calloway's letter raising these concerns with this investigation and calling them to the attention of Defendant Drake. No response was ever given, and no further investigation was conducted, despite the fact that this response letter raised new concerns of age discrimination and retaliation that had occurred since Mr. Calloway's report.

**D.  The Plaintiffs' Positions Are Eliminated and They Are Forced into Retirement**

37. Less than a week after the issuance of the report of the Calloway investigation, Defendant Eckhart and the respective Human Resources representatives for ESL Programs and the College, Jackie Severance and Bryan Lenzo, met with the Plaintiffs and each of the other Academic Program Specialists in ESL Programs and told them that their positions—which most of them had served in continuously since the 1980s—were being eliminated, and they were being reclassified as lecturers with limited contractual appointments.

38. In their new classifications, which were 8- to 9-month positions instead of the 12-month, continuous positions they had previously held, the Plaintiffs were not guaranteed summer employment (meaning their pay would likely be cut by a quarter), and they were not assured of

11

the renewal of their employment at the end of the spring semester of 2015 or thereafter. In other words, they were now in the same position as the older lecturers who had previously been removed without warning by Defendant Eckhart.

39. During Ms. Moon's meeting, Mr. Lenzo advised that Human Resources would assist ESL Programs employees in finding other employment—further emphasizing the likelihood that at least some staff members would not be rehired after the expiration of these new, limited contracts.

40. The explanations Defendant Eckhart and the Human Resources representatives gave for this change were transparently pretextual, consistent with Defendant Eckhart's open statement that he intended to make changes that would cause many of the older workers in ESL Programs to retire.

41. Defendant Eckhart and the Human Resources representatives told the Plaintiffs and their colleagues that the changes were triggered by a review of ESL Programs by OSU's Office of Academic Affairs—a review that was not even complete or reported in writing in any way at the time of the announcement.

42. Defendant Eckhart and the Human Resources representatives also told the Plaintiffs and their colleagues that OSU required the change in position classification because the job description for Administrative and Professional staff did not permit as much hands-on teaching as the Academic Program Specialists were doing—but the balance of teaching and administrative duties (which was different for each staff member) had not changed for at least the previous thirty years.

43. The reduction in these positions was particularly notable because it occurred during a period in which the workload and scope of ESL Programs had substantially increased,

requiring *more* curriculum development, administrative work, and teaching, due to OSU's increased focus on recruiting and enrolling foreign students.  When Ms. Moon pointed out the increased burden on staff during her meeting with Defendant Eckhart and the Human Resources representatives, Defendant Eckhart replied that she should look for work elsewhere if she did not approve of the workload.

44. Meanwhile, despite telling Mr. Calloway that the three coordinator positions Defendant Eckhart had filled with younger, less qualified employees were merely changes in assignment or "working titles," and convincing Mr. Calloway not to even investigate the filling of these positions on that basis, these three positions remained classified as full-time Academic Program Specialist positions with corresponding pay, benefits, and job security.  The two coordinators who were still in these positions at that time (one had resigned) were permitted to remain in these positions without an application process and were thus completely protected from the elimination of the older workers' full-time staff positions.

45. The elimination of the Plaintiffs' full-time staff positions was intentionally timed to force them into retirement, just as Defendant Eckhart had previously forecast in conversations with other employees.  In December 2014, the Ohio Public Employee Retirement System was scheduled for a major transition.  Older pension-eligible employees remaining in public employment after early December 2014 would need to serve several additional years to achieve the same level of pension that would be available to those retiring before that date.  If the Plaintiffs (and other older peers in ESL Programs) stayed beyond that date, but their contracts were not renewed at the end of the spring semester, they would stand to lose hundreds of thousands of dollars in pension benefits.  They would also lose other benefits, such as accrued vacation pay that would be reduced in value to reflect their new, more limited positions.

13

46. In light of the elimination of their full-time positions and their job security, the ongoing and unchecked pattern of harassing conduct by Defendant Eckhart, and the knowledge that OSU's internal anti-discrimination protections were not being enforced despite direct evidence of discriminatory conduct, the Plaintiffs had no choice but to retire.  They did so as a result of age-based discriminatory and retaliatory actions by the Defendants that created working conditions so intolerable that a reasonable employee in either of their circumstances would have been compelled to resign. Ms. Moon and Ms. Taaffe retired effective November 30, 2014.

47. As soon as the elimination of their positions forced the Plaintiffs and other employees in ESL Programs into resignation or retirement, Defendant Eckhart began maneuvering to restore the full-time staff positions that had just been eliminated, further demonstrating that his true intent was to push older workers out of the department and replace them with younger workers.

48. At the end of January 2015, OSU posted seven (7) full-time Administrative and Professional staff positions in ESL programs.  The Plaintiffs and other older workers whose full-time positions had been eliminated applied for each of these positions, whereupon the positions were abruptly removed from the system without being filled.  Upon information and belief, these positions were not filled, and remain unfilled despite a substantial need for full-time, year-round staff members to administer ESL Programs, in retaliation for the Plaintiffs' opposition to systemic age discrimination within ESL Programs, and to prevent the Plaintiffs from returning to full-time employment at the University, despite their obvious qualifications for these positions.

49. The hostile working environment created by Defendant Eckhart and supported and ratified by his superiors, the long-term pattern of providing promotions, job protection, and favorable assignments to younger, less qualified employees, while pushing older, more qualified

14

employees out of their jobs, and the elimination of the Plaintiffs' full-time positions, which resulted in their constructive discharge, were based on the age of the Plaintiffs (as well as the ages of the Plaintiffs' older co-workers) and in retaliation for their opposition to age discrimination within ESL Programs.

50. The actions described in the above paragraphs deprived the Plaintiffs of their positions in public employment and their livelihoods.

## V. EXHAUSTION OF ADMINISTRATIVE REMEDIES

51. Ms. Taaffe filed a charge of age discrimination with the U.S. Equal Employment Opportunity Commission, which the Commission received on May 8, 2014. She filed an amended charge alleging age discrimination and retaliation, which the Commission received on January 29, 2015. Both charges are attached hereto and collectively marked as Exhibit 1.

52. Ms. Moon filed a charge of age discrimination and retaliation with the U.S. Equal Employment Opportunity Commission, which the Commission received on January 26, 2015. This charge is attached hereto and marked as Exhibit 2.

53. Through these timely charges of age discrimination and retaliation, which were filed more than sixty days prior to the initiation of this action, the Plaintiffs have satisfied all administrative prerequisites to this action under the Age Discrimination in Employment Act.

## VI. CLAIMS FOR RELIEF

### A. Discrimination in Violation of the Age Discrimination in Employment Act.

54. The Plaintiffs incorporate the above paragraphs as if fully rewritten herein.

55. The Plaintiffs, who were over the age of 40, were subjected to adverse employment actions by the Defendants, including a hostile work environment, the elimination of their full-time staff positions, and constructive discharge, because of their age.

15

56. These actions constituted age discrimination in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*

**B. Retaliation in Violation of the Age Discrimination in Employment Act.**

57. The Plaintiffs incorporate the above paragraphs as if fully rewritten herein.

58. The Plaintiffs opposed and participated in actions contesting the Defendants' age-discriminatory actions against themselves and other employees, and were subjected to materially adverse actions by the Defendants, including a hostile work environment, the elimination of their full-time staff positions, and constructive discharge, in retaliation for this protected activity.

59. These actions constituted retaliation in violation of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621 *et seq.*

**VII. PRAYER FOR RELIEF**

60. WHEREFORE, the Plaintiff requests the following relief: (1) injunctive relief ordering their reinstatement by the Defendants to their former position and prohibiting further age discrimination and retaliation; (2) ancillary relief in the form of the costs of this action, including reasonable attorneys' fees; and (3) such other relief as the Court deems appropriate.

Respectfully Submitted,

/s/Frederick M. Gittes_____
Frederick M. Gittes (0031444)
fgittes@gitteslaw.com
Jeffrey P. Vardaro (0081819)
jvardaro@gitteslaw.com
The Gittes Law Group
723 Oak St.
Columbus, OH 43205
(614) 222-4735
Fax: (614) 221-9655

Attorneys for Plaintiffs

/s/Laurie McCann_____
Laurie McCann, Interim Sr. Vice President,
Legal Advocacy (per telephone authority)
LMcCann@aarp.org
Daniel Kohrman, Senior Litigation Attorney
DKohrman@aarp.org
Dara S. Smith, Attorney
DSmith@aarp.org
AARP Foundation Litigation
601 E St. NW
Washington, DC 20049
Phone: (202) 434-2064/Fax: (202) 434-6424