```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF OHIO
                       EASTERN DIVISION


Julianne Taaffe, et al.,      :

        Plaintiffs,            :

    v.                         :        Case No. 2:15-CV-2870

Michael V. Drake,              :
et al.,                                 Magistrate Judge Kemp
        Defendants.            :
```

                        OPINION AND ORDER

    Plaintiffs Julianne Taaffe and Kathryn Moon, both former staff members of the Ohio State University who taught in the English as a Second Language program, filed this complaint alleging that they and other older workers in that program were the subject of age discrimination, and that after both Plaintiffs complained about their treatment, their positions were eliminated and they were forced into retirement.  They brought discrimination and retaliation claims against five University officials, including OSU president Dr. Michael Drake; OSU provost Joseph E. Steinmetz; Cheryl Achterberg, a college dean; Sandra Stroot, interim chair of the Department of Teaching and Learning; and Robert Eckhart, Executive Director of the English as a Second Language programs - all officials who "hold the authority to effect prospective relief for the Plaintiffs regarding all employment matters."  (Complaint, ¶6).  This case has been referred to the Magistrate Judge for full disposition by consent of the parties.  See Doc. 13.

    On February 4, 2016, all defendants moved for judgment on the pleadings.  Defendants assert generally that "this court is not the proper forum for private statutory age discrimination

claims under the ... ADEA ... against these individual defendants." Doc. 18, at 2. They then argue that the defendants, as individuals, are not "employers" within the meaning of the ADEA, that this case does not fall within the Eleventh Amendment exception for actions for injunctive relief against state officials as explained in Ex parte Young, 209 U.S. 123 (1908), that the factual allegations are insufficient as to each Defendant, and that neither Defendant Steinmetz nor Defendant Eckhart has the power to provide any injunctive relief which the Court might order. The motion has been fully briefed, including a sur-reply filed by Plaintiffs. For the following reasons, the motion for judgment on the pleadings will be denied.

## I.  Legal Standard

A motion for judgment on the pleadings filed under Fed.R.Civ.P. 12(c) attacks the sufficiency of the pleadings and is evaluated under the same standard as a motion to dismiss. Amersbach v. City of Cleveland, 598 F.2d 1033, 1038 (6th Cir. 1979). In ruling upon such motion, the Court must accept as true all well- pleaded material allegations of the pleadings of the opposing party, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment. Southern Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 479 F.2d 478, 480 (6th Cir. 1973). The same rules which apply to judging the sufficiency of the pleadings apply to a Rule 12(c) motion as to a motion filed under Rule 12(b)(6); that is, the Court must separate factual allegations from legal conclusions, and may consider as true only those factual allegations which meet a threshold test for plausibility. See, e.g., Tucker v. Middleburg-Legacy Place, 539 F.3d 545 (6th Cir. 2008), citing, inter alia, Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). It is with these standards in mind that the motion for judgment on the pleadings must be decided.

## II. Factual Background

Because the case is before the Court by way of a motion for judgment on the pleadings, the only relevant facts are those contained in the complaint. The Court will summarize them briefly.

The two Plaintiffs are older individuals, in their late fifties or early sixties. Each was an instructor in OSU's English as a Second Language program, and each began working there in 1983. Each was a well-regarded professional.

In 2009, OSU hired a new director of the ESL programs. He served in that position for four years. During his tenure, he expressed disfavor for older employees. University officials did not discipline him for doing so. In 2013, that director was replaced by Defendant Eckhart, who was less qualified for the position than older employees within the ESL program. Mr. Eckhart "was openly hostile to older workers" (Complaint, ¶21) and took steps to eliminate them while promoting younger replacements, many of whom were less qualified. He specifically targeted Plaintiff Taaffe, giving her an unmerited low evaluation. She complained about that treatment to Defendant Achterberg and filed a charge of discrimination with the EEOC. Plaintiff Moon made a similar complaint, as did others, and OSU commissioned an investigation of these complaints. The investigation was superficial and did not substantiate the complaints made. Plaintiffs asked Defendant Drake, the University President, to look into the matter, but received no response.

Less than a week after the investigation was completed, Plaintiffs' positions were eliminated, and they were "reclassified as lecturers with limited contractual appointments." (Complaint, ¶37). The result was that Plaintiffs faced a likely pay cut and had no assurance of future employment.

Additionally, they faced the prospect of a substantial loss of retirement benefits and vacation pay if they did not retire quickly. Each retired, a result which Defendant Eckhart had predicted as a result of the changes he instituted. Their jobs were then reclassified and posted, but once Plaintiffs and other older workers applied for those positions, the posting was removed. As relief for these actions, Plaintiffs seek reinstatement and other ancillary relief.

### III. Discussion

Defendants advance four separate reasons why either the complaint, or certain defendants, should be dismissed. The Court will discuss these arguments in turn, grouping some of them together because they raise related issues.

#### A. Relief Available against Individual Defendants

The first issue raised is whether the Court can grant relief under the ADEA against individual defendants. Defendants assert that, under the statute, only an "employer" can be held liable, and that the employer in this case is the University and not any of its officials. They concede that, in some circumstances, agents of an employer can count as the employer, but assert that this concept is inapplicable to governmental agencies like OSU. Plaintiffs respond that every federal court which has considered the question, including the Court of Appeals for the Sixth Circuit (albeit in an unpublished decision), has held that it is appropriate for a public employee to seek injunctive relief against individual state officials under the ADEA.

The Court begins with the key case upon which Defendants rely, <u>Michigan Corrections Organization v. Michigan Dept. of Corrections</u>, 774 F.3d 895 (6th Cir. 2014). That was an FLSA case brought by certain corrections officers and their union against the Michigan Department of Corrections and its director seeking overtime pay and declaratory relief. The district court

dismissed any claim for damages as barred by the Eleventh Amendment, and further concluded that no claim for declaratory relief could be asserted against the Department's director.  The Court of Appeals, affirming, concluded that because the FLSA does not create a private right of action for injunctive relief (such relief can be granted only in actions brought by the Department of Labor), and because any claim for money damages was barred by the Eleventh Amendment, the plaintiffs simply had no private right of action that could form the basis for a declaratory judgment.  It noted that the Declaratory Judgment Act, 28 U.S.C. §2201, does not create a cause of action, but can be invoked only when there is "a preexisting right enforceable in federal court." Id. at 902.  Similarly, the Court of Appeals held that "Ex parte Young provides a path around sovereign immunity if the plaintiff already has a cause of action from somewhere else" - which, in the case of a suit brought under the FLSA, the plaintiffs did not.  Id. at 905.

Clearly, there are differences between the FLSA and the ADEA.  The latter statute provides for a private cause of action for injunctive relief.  See 29 U.S.C. §626(c)(1)("Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter...").  That difference, according to Defendants, is immaterial because, under 29 U.S.C. §630(b), agents of a State, of a political subdivision of a State, or of a State agency or instrumentality do not meet the statutory definition of an "employer."  Thus, there is no private right of action against officials like the Defendants under the ADEA, and nothing to support relief under a statute like the Declaratory Judgment Act, or, more importantly, under an Ex parte Young theory.

Since Plaintiffs cite a number of cases permitting actions

for injunctive relief against state officials in cases brought under the ADEA, it is instructive to see how they have dealt with this issue.  The Court begins with Meekison v. Voinovich, 67 Fed. Appx. 900 (6th Cir. June 18, 2003), which affirmed a decision on this issue rendered by Judge Marbley of this Court.  In his opinion, Judge Marbley recognized that individual defendants could not be held liable under the ADEA, but he concluded that an injunctive action could proceed against individual defendants. Meekison v. Voinovich, 17 F.Supp.2d 725 (S.D. Ohio 1998).  The Court of Appeals agreed, noting that "private individuals may sue for injunctive relief to enforce the standards of the ADA under Ex parte Young ... [and] [t]he same is true under the ADEA." Meekison, 67 Fed. Appx. at 901.  It does not appear, however, that either court in that case was presented with the precise argument which Defendants make here.  The same is true for decisions such as Smith v. Grady, 960 F.Supp.2d 735, 756 (S.D. Ohio 2013), which, without much discussion, allowed claims for injunctive relief under the ADEA to proceed against state officials.

Most of the other decisions cited in Plaintiff's responsive memoranda comment that actions for injunctive relief against state officials can be maintained under the ADEA, but those comments are *dicta*, usually because the only named defendant was the State or a State agency.  See, e.g., Shahin v. Delaware, 563 Fed.Appx. 196, 198 (3d Cir. Apr. 21, 2014)("Shahin filed suit against the State of Delaware and OMB and did not name any state officials.  Accordingly, the defendants are immune from suit"). While these cases provide some indirect support for Plaintiffs' position, none address the dichotomy which exists between Ohio State's status as an "employer" and the Defendants' status as "non-employers."  On the other hand, Plaintiffs correctly point out that there do not appear to be any cases which have held,

-6-

either for the reasons advanced by Defendants here or for any other reason, that a suit under the ADEA for injunctive relief cannot be maintained against the appropriate State officials. And, as Plaintiffs also observe, there are decisions such as <u>Diaz v. Michigan Dept. of Corrections</u>, 703 F.3d 956 (6th Cir. 2013) which allow suits for prospective injunctive relief brought under the FMLA to proceed against state officials even though the Court of Appeals has held that "the FMLA's individual liability provision does not extend to public agencies," see <u>Mitchell v. Chapman</u>, 343 F.3d 811, 832 (6th Cir. 2003).

There is a strong argument to be made that <u>Diaz</u>, a published decision, is binding on this Court. It is hard to find a meaningful way to distinguish the key holding there, which is that under a similar definition of "employer" that excludes individual public officials, <u>Ex parte Young</u> is nonetheless a proper vehicle under which to bring injunctive relief actions against such officials when it is alleged that the State or one of its instrumentalities violated the statute in question. Given the Congress clearly understood how <u>Ex parte Young</u> operates, and that it provided for injunctive relief against States in both the FMLA and the ADEA, it would be surprising if Congress meant to eliminate <u>Ex parte Young</u> actions simply by using a definition of "employer" which precludes individual liability on the part of governmental officials. After all, if an ADEA Plaintiff prevails on his or her claim for reinstatement, that relief will be implemented by the official acting as an agent for the State, and it effectively runs against the statutorily-defined "employer" even though the <u>Ex parte Young</u> fiction requires that the injunction be directed to individual State employees. That is, in this Court's view, the correct resolution of the interplay between the ADEA and <u>Ex parte Young</u>, and the Court would so hold even if <u>Diaz</u> could somehow be distinguished.

The primary flaw in Defendants' argument is the failure to recognize that Ex parte Young creates a legal fiction which permits a plaintiff to obtain legal relief for a violation of either federal constitutional or federal statutory rights when such relief would otherwise be barred by the Eleventh Amendment. True, there must be some underlying source supporting the claim asserted; in the §1983 context, it is that statute's incorporation of constitutional rights themselves.  In the statutory context, the statute in question must confer rights on the plaintiffs who seek to use Ex parte Young as a vehicle for obtaining relief.  The FLSA does not confer such rights.  On the other hand, statutes like the FMLA and the ADEA do.  Once those rights are identified, if the Eleventh Amendment operates as a bar to their being asserted directly against a plaintiff's "employer" because that employer is a State or State agency immune from suit, Ex parte Young allows the involved officials to be named as "stand-ins" for the State.  That is what the Plaintiffs have done here, and this Court is simply not convinced that the definitional provisions of 29 U.S.C. §630(b) prohibit, or fail to provide a proper basis, for that action.

Defendants make an additional argument about Ex parte Young in their reply memorandum (which is the reason why Plaintiffs filed a sur-reply).  There, they assert that even if the predicates for an Ex parte Young action exist here, under the Supreme Court's decision in Idaho v. Coeur d'Alene Tribe of Idaho, 521 U.S. 261 (1997), the Court should decline to entertain the case.  That is so, they claim, because Coeur d'Alene limited the use of Ex parte Young to circumstances "where there is no state forum available to vindicate federal interests" and where allowing a suit in federal court would "serve[] the important interest in interpreting federal law."  Reply Memorandum, Doc. 29, at 5.  They point to the availability of an action against

the University in the Ohio Court of Claims, and argue that the Court of Claims can easily interpret federal law.

The Court agrees with Plaintiffs that this is not a fair reading of Coeur d'Alene.  If it were, it could be argued that because the Ohio Court of Claims has the power to decide issues of federal law, and because it is an available forum for suits against the State of Ohio (albeit with some procedural restrictions), the federal courts should not permit any case to proceed under an Ex parte Young theory if the same or similar claims could be brought in the Ohio Court of Claims - or, by extension, in any forum in which a State has executed a limited waiver of sovereign immunity.  That would represent a drastic shift in federal jurisprudence and practice which the Coeur d'Alene court did not contemplate and which federal courts have not adopted.  The true import of Coeur d'Alene's lead opinion - joined in for the most part by only two justices - was to recognize "the wisdom and necessity of considering, when determining the applicability of the Eleventh Amendment, the real affront to a State of allowing a [federal] suit to proceed."  Id. at 277.  Those justices were concerned that the underlying claim was, in essence, an action to quiet title, something "which implicates special sovereignty interests."  Id. at 281.  Further, a quiet title action itself could not be maintained against the State in a federal court due to the Eleventh Amendment bar.  The result of issuing the injunction requested would be "an immediate effect on jurisdictional control over important public lands..."  Id. at 282.  Both the lead opinion and Justice O'Connor's concurring opinion considered that to be a critical factor, but the concurrence expressed concern about adopting a case-by-case approach to applying Ex parte Young in the future, contending that it was not and had never been the law that such an approach was appropriate, and noting that the availability of a state

forum was not ordinarily a bar to federal court litigation brought for the purpose of vindicating federal rights. The dissenting opinion similarly decried the lead opinion's approach as "at odds with Young's result as [well as] with the foundational doctrine on which Young rests," noting that the concurring opinion "charts a more limited course that wisely rejects the lead opinion's call for federal jurisdiction contingent on case-by-case balancing." Id. at 297 (Souter, J., dissenting).

By contrast, this case is a garden-variety ADEA case. It implicates no special sovereign interests of the State of Ohio. As Plaintiffs argue in their sur-reply, the Court of Appeals has essentially rejected this reasoning in a suit brought under the ADA. Carten v. Kent State University, 282 F.3d 391, 397 (6th Cir. 2002). Again, that decision is likely binding on this issue even though a different statute was involved, since the legal precepts are indistinguishable. But, even if it were not, the facts of this case do not remotely resemble those presented in Coeur d'Alene, and there is simply no basis for excluding these Plaintiffs from federal court just because they may also have had the right to sue OSU in the Ohio Court of Claims.

### B. Personal Involvement

Defendants' next argument is that, even if Plaintiffs have asserted an ADEA claim that can properly be considered by this Court, they have not pleaded it against the right parties. They assert that "[t]he only proper defendant under an *Ex parte Young* claim is a state actor in his/her official capacity who is threatening or undertook acts that violate federal law and who has the authority to provide the prospective injunctive relief sought," Doc. 18, at 13. Based on this statement of the law, Defendants contend that the allegations in the complaint are, as to four of the five named defendants, so "sparse and speculative

-10-

that the court should dismiss the Complaint." Id. at 14. In their view, the only Defendant against whom the Plaintiffs may have stated an ADEA claim is Defendant Eckhart. However, he is no longer the Executive Director of the ELS Program and therefore cannot provide Plaintiffs with any relief. Consequently, Defendants argue that the claims against him should be dismissed as well – essentially leaving Plaintiffs without a remedy even if they can prove an ADEA violation.

As with their Coeur d'Alene argument, Defendants are simply incorrect on how the law operates here. It is true that in a suit for money damages against a state official sued in his or her individual capacity, the plaintiff must allege that the defendant was personally involved in the actions constituting a violation of the plaintiff's constitutional or statutory rights. See, e.g., Bellamy v. Bradley, 729 F.2d 416, 421 (6th Cir. 1984)(a §1983 plaintiff must show that each defendant "encouraged the specific incident of misconduct or in some other way directly participated in it"). But when only prospective injunctive relief is requested, that type of showing is unnecessary. The proper defendants in such an action are the ones who have the power to provide the relief sought, whether or not they were involved in the allegedly illegal conduct at issue. Otherwise, plaintiffs in these types of situations would potentially be left without any remedy if the groups of defendants who violated the law and those who could fix the problem if ordered to do so were mutually exclusive.

Ex parte Young, 209 U.S. at 157, states the applicable principle in this way: "In making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that such officer must have some connection with the enforcement of the act...." That is a different standard than the "personal involvement" test applied

-11-

in cases like Bellamy v. Bradley, which are concerned with liability for money damages.  As noted in Luckey v. Harris, 860 F.2d 1012, 1015 (11th Cir. 1988), "[p]ersonal action by defendants individually is not a necessary condition of injunctive relief against state officers in their official capacity.  All that is required is that the official be responsible for the challenged action."  This Court has expressly followed that holding.  See, e.g., Brown v. Collins, 2008 WL 4059887, *3 (S.D. Ohio Aug. 25, 2008)(Kemp, M.J.), adopted and affirmed 2009 WL 152315 (S.D. Ohio Jan. 20, 2009).  Even the governor of a state can be a proper defendant for purposes of obtaining prospective injunctive relief in the proper circumstances based on the governor's duty to enforce the law. See, e.g., Allied Artists Picture Corp. v. Rhodes, 679 F.2d 656, 665 n. 5 (6th Cir. 1982).

    The primary case relied on by Defendants is Children's Healthcare is a Legal Duty, Inc. v. Deters, 92 F.3d 1412 (6th Cir. 1996).  That case arose, however, in the context of a suit asking the court to strike down portions of an allegedly unconstitutional state law.  In those circumstances, the Court of Appeals held that, absent some actual prospect of enforcement of the statute against the plaintiffs, they could not simply sue the Attorney General, who is tasked with the enforcement of laws in Ohio, and ask for prospective relief.  This case, by contrast, involves actions which have already been taken - not future actions which may or may not occur - and a request for relief against officials who have the power to remedy the effects of those actions, should the Court find them to have been taken in violation of the ADEA.  Clearly, the same concern about an actual threat of enforcement of an unconstitutional statute does not apply here.  It is useful to note that high-ranking university officials are typically named as defendants in suits invoking the

-12-

ADEA, even if it seems likely that those officials were not directly involved in individual acts of discrimination.  See, e.g., Benson v. University of Maine System, 857 F.Supp.2d 171 (D. Me. 2012)(permitting joinder of university chancellor as proper party in an ADEA failure-to-hire case); Siring v. Oregon State Bd. of Higher Educ., 927 F.Supp.2d 1030 (D. Or. 2012)(suit brought against Board of Higher Education based on claim under the ADEA for discriminatory firing).  The Court finds that the complaint alleges a sufficient nexus between the positions held by the defendants and the ability to order reinstatement to satisfy the "connection" requirement of Ex parte Young, and that, with the exceptions noted below, no defendant is entitled to dismissal on these grounds.

As Plaintiffs note, the University has asserted that two of the named defendants no longer have any authority to reinstate the Plaintiffs to their former positions.  If that is true, they are no longer proper defendants.  However, Plaintiffs correctly point out that in such a situation, an automatic substitution of parties occurs under Fed.R.Civ.P. 25(d).  Defendants claim that the Court should view the prospect of a "revolving door of defendant substitutions" as a reason to accept their theory of what type of personal involvement is required under Ex parte Young.  They apparently fail to recognize both that the plain language of Rule 25 makes the substitution of parties automatic under these circumstances, without any need for action by the Court or the parties, and that if it were otherwise, a plaintiff could be deprived of an otherwise viable cause of action simply because a defendant chose, on multiple occasions, to replace its decision-makers.  That obviously cannot be the law.  The Court therefore recognizes that a substitution of parties has occurred, which moots the motion to dismiss as it applies to Defendants Steinmetz and Eckhart, because they are no longer parties to the

case.

## IV. Conclusion

Having found no merit in any of the arguments advanced by Defendants in their motion for judgment on the pleadings, that motion (Doc. 18) is denied.

/s/ Terence P. Kemp
United States Magistrate Judge